FILED

09/15/2022

U.S. DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
Roger A.G. Sharpe, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Cause No. 1:22-cr-00130-TWP-MJD |
| v. | ) | |
| | ) | |
| TAMMY J. SCUDDER, | ) | |
| | ) | |
| Defendant. | ) | |

## INFORMATION

The United States Attorney charges:

1.  At times material to this Information:

a.      Beginning in approximately 2012, and continuing until at least approximately December 2020, TAMMY J. SCUDDER ("SCUDDER") was the Controller for Plymate, Inc. ("Plymate").

b.      SCUDDER resided in Shelbyville, Indiana, which is in the Southern District of Indiana, and maintained a personal checking account at First Merchants Bank, in Muncie, Indiana, ending 7190, and a personal saving's account at KeyBank ending in 2706.

c.      Plymate was an Indiana corporation in the business of providing uniform rentals, floor mats, and commercial supplies for other businesses including school systems.  Plymate's operations were based in Shelbyville, Indiana, which is within the Southern District of Indiana.  Plymate maintained a corporate bank account at KeyBank ending in 1166 ("Plymate's Operations KeyBank Account").  KeyBank is a regional bank headquartered in Cleveland, Ohio, and is the primary subsidiary of KeyCorp.

d.      As Controller, SCUDDER was Plymate's top accounting employee, and reported

directly to the Chief Executive Officer, Individual A.   SCUDDER's duties and responsibilities included overseeing Plymate's accounting department, maintaining Plymate's accounting ledgers, and managing Plymate's payroll, accounts payable and receivable, and Plymate's Operations KeyBank Account and other accounts.

      e.     As Controller, SCUDDER had access to Plymate's online Operations KeyBank Account and other accounts.   SCUDDER further had access to Plymate's QuickBooks software, and thus, SCUDDER was able to generate checks in Plymate's name and print them onto Plymate's check stock to which she also had access.   SCUDDER further had access to Individual A's signature stamp, which could be used as signature authority on checks in which Plymate was the payor.   Checks generated by Plymate's QuickBooks software in which Plymate was the payor were funded by Plymate's Operations KeyBank Account.

      f.     As Controller, SCUDDER knew that Plymate provided health insurance to its employees through a self-funded plan ("Plymate's Group Health Plan").   Plymate's Group Health Plan was administrated by an outside entity, Company A.   As part of Plymate's Group Health Plan, Plymate employees submitted their health insurance claims to Company A for processing. Company A then prepared a list of each claim, and submitted the list on a weekly basis to Plymate for payment.

      g.     Plymate funded its employees' Group Health Plan claims by making transfers from its Plymate Operations KeyBank account to its Plymate Group Health Plan KeyBank account.

      h.     Upon receiving Company A's list of Plymate's employees' health insurance claims submitted as part of Plymate's Group Health Plan, Plymate transferred the total amount of all of the submitted claims from its Operations KeyBank account to its Group Health Plan KeyBank

account.   Company A then drafted individual checks from the Plymate Group Health Plan KeyBank account to the payee employee or provider in the amount of the individual employee's claim, and mailed the checks to the Plymate employee or the provider.   The Plymate Group Health Plan KeyBank account was funded by the Plymate Operations KeyBank account through the weekly transfers.

     i.    SCUDDER was authorized to use funds in Plymate's Operations KeyBank Account, and its payroll and accounts payable systems for business expenses only, and not for personal expenditures.

    2.    Beginning in or about 2012, and continuing until at least in or about December 2020, in the Southern District of Indiana, Indianapolis Division, and elsewhere,

TAMMY J. SCUDDER,

defendant herein, devised, intended to devise, and participated in a scheme to defraud, and to obtain money and property by means of materially false and fraudulent pretenses, representations, and promises, and by concealment of material facts, which scheme is further described below.

    3.    It was part of the scheme that SCUDDER abused her position of trust as Plymate's Controller to exploit a vulnerability in Plymate's accounting system in that SCUDDER knew that Plymate's Group Health Plan KeyBank account was difficult to reconcile because the Group Health Plan KeyBank account was funded by Plymate's Operations KeyBank account based upon the total amount of the weekly claims on the list it received from Company A, rather than by each claim individually.   There was an unpredictable time delay for when each individual check would be cashed by the payee.

    4.    It was further part of the scheme that SCUDDER accessed Plymate's QuickBooks

software to generate and print a Plymate check from payor Plymate to payee SCUDDER. SCUDDER then printed the check onto Plymate check stock and used Individual A's signature stamp on the payer signature line, without Individual A's knowledge, authorization, or consent.

5.     It was further part of the scheme that after SCUDDER printed the check, SCUDDER concealed the theft by altering Plymate's QuickBooks records.  SCUDDER first voided the check in Plymate's QuickBooks software, and then intentionally deleted all of the data relating to the check from the QuickBooks software to conceal the creation of the check from Plymate's records.

6.     It was further part of the scheme that SCUDDER further  concealed her theft by falsifying Plymate's accounting records to hide the funds she had embezzled by either:

a.     Falsely increasing the records showing the total amount of health care claims submitted by Plymate employees as part of Plymate's Health Care Plan by the amount that SCUDDER had embezzled; or

b.     Creating false entries in Plymate's QuickBooks software to make it appear that that Plymate had transferred funds in the amount that she had embezzled from Plymate's Operations KeyBank account to Plymate's Group Health Plan KeyBank account, when in fact, no such transfer had taken place.

7.     It was further part of the scheme that SCUDDER falsified records in order to conceal her theft by making it appear as though Plymate's Operating and Group Health Plan Accounts had been approximately reconciled, when in fact, SCUDDER did not complete these reconciliations because to have done so would have shown an imbalance in the Group Health Plan KeyBank account and highlighted her theft of funds from Plymate.

8.      It was further part of the scheme that the checks that SCUDDER created from Plymate to SCUDDER were funded through Plymate's Operations KeyBank Account.

9.      It was further part of the scheme that SCUDDER executed the checks by depositing them into her First Merchants checking account ending in 7190, or by depositing them into her KeyBank saving's account ending in 2706.

10.     It was further part of the scheme that SCUDDER used the funds she embezzled from Plymate for her own personal expenditures such as personal vacations, paying off personal debt, funding her children's educational expenditures, and by making improvements to a residence she owned in Shelbyville, Indiana.

11.     It was further part of the scheme that as set forth in Count 1, on or about March 1, 2018, employees from Plymate submitted claims to Plymate's Group Health Plan to Company A in the amount of $343.13.

12.     It was further part of the scheme that SCUDDER used Plymate's QuickBooks software to generate a check from payor Plymate to payee SCUDDER in the amount of $4,138.62. It was further part of the scheme that SCUDDER then printed the check she generated onto Plymate's check stock, and used Individual A's signature stamp to sign as payor without his knowledge, authorization, or consent.  It was further part of the scheme that SCUDDER then concealed the fraudulent payment by first voiding the check she generated, and then deleting the data from Plymate's QuickBooks software.

13.     It was further part of the scheme that SCUDDER then falsified Plymate's QuickBooks records by increasing the amount Plymate transferred from its Operations KeyBank account from $343.13 to $4,481.75 (representing the total of the legitimate employee health

insurance claims of $343.13 and SCUDDER's false and fraudulent check in the amount of $4,138.62).   It was further part of the scheme that SCUDDER's false entries and deletions made it appear that Plymate had received $4,481.75 in employee health care claims from Company Aon or about March 1, 2018, when in reality, Plymate had only received $343.11.

14.     Between February 2, 2012, and December 17, 2020, SCUDDER generated, printed, and used Individual A's signature stamp to create 154 false and fraudulent checks from payor Plymate to payee SCUDDER in the amount of $693,708.75.   It was further part of the scheme that SCUDDER deposited $624,722.75 in stolen funds into her bank accounts at First Merchants Bank ending in 7190 and KeyBank ending in 2706, and then used the funds for her own personal expenditures.   Upon presentation of a majority of the fraudulent checks for deposit, cash back was taken prior to deposit and totaled $68,986.

15.     It was further part of the scheme that defendant SCUDDER did misrepresent, conceal, and hide, and cause to be misrepresented, concealed, and hidden, acts done in furtherance of the scheme and the purpose of those acts.

## COUNTS ONE THROUGH FOUR

16.     Paragraphs 1 through 15 of the General Allegations in this Information are incorporated here as if set out in full.

17.     On or about the date specified below, TAMMY J. SCUDDER, the defendant, for the purpose of executing the aforesaid scheme and artifice, and attempting to do so, did knowingly transmit and cause to be transmitted, by means of wire communication in interstate and foreign commerce, certain writings, signs, and signals, as more particularly described below:

| Count | Approximate Date | Description of Wire Communication |
| --- | --- | --- |

| 1 | March 6, 2018 | $4,138.62 check from Plymate's Operations KeyBank account deposited into Scudder's First Merchants bank personal checking account, with $700 cash back. |
|---|---|---|
| 2 | December 4, 2017 | $8,947.02 check from Plymate's Operations KeyBank account deposited into Scudder's First Merchants bank personal checking account, with $700 cash back. |
| 3 | January 8, 2019 | $5,218.09 check from Plymate's Operations KeyBank account deposited into Scudder's First Merchant's bank personal checking account, with $3,204.30 cash back that was immediately used to purchase an official bank check to "Hoosier Closets" with Scudder as the remitter |
| 4 | March 5, 2020 | $9,862.40 check from Plymate's Operations KeyBank account deposited into Scudder's First Merchants bank personal checking account, with $300 cash back. |

Each Count in violation of Title 18, United States Code, Section 1343 and 2.

## **FORFEITURE ALLEGATIONS**

16.     The allegations of Counts One through Four are incorporated here for the purpose of alleging forfeiture to the United States pursuant to Title 28, United States Code, Section 2461(c) and Title 18, United States Code, Section 981(a)(1)(C).

7

17.    Upon conviction of the offenses in violation of Title 18 United States Code, Section 1343 and 2 set forth in Counts One through Four of the Information, the Defendant, TAMMY J. SCUDDER, shall for forfeit to the United States of America any property, real or personal, which constitutes or is derived from proceeds traceable to the offenses.

18.    Further, upon conviction, the United States will seek an order of forfeiture in the form of a money judgment of $693,708.75, representing the amount of proceeds the Defendant, TAMMY J. SCUDDER, obtained from violations of Title 18 United States Code Section 1343 and 2, as charged in Counts One through Four of the Information.

19.    If any of the forfeitable property described above, as a result of any act or omission by defendant:

(a)    cannot be located upon the exercise of due diligence;

(b)    has been transferred or sold to, or deposited with, a third party;

(c)    has been placed beyond the jurisdiction of the court;

(d)    has been substantially diminished in value; or

(e)    has been commingled with other property which cannot be divided without difficulty;

the United States of America shall be entitled to forfeiture of substitute property pursuant to the provisions of Title 21, United States Code, Section 853(p), as incorporated by Title 28, United States Code, Section 2461(c);

All pursuant to Title 28, United States Code, Section 2461(c) and Title 18, United States Code, Section 981(a)(1)(C).


ZACHARY A. MYERS
United States Attorney


Tiffany J. Preston
Assistant United States Attorney


Kyle M. Sawa    Nicholas J. Linder
Unit Chief      Criminal Chief

9