FILED

09/15/2022

U.S. DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
Roger A.G. Sharpe, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) Cause No.   1:22-cr-00130-TWP-MJD |
| TAMMY J. SCUDDER, | ) |
| | ) |
| Defendant. | ) |

## PETITION TO ENTER PLEA OF GUILTY AND PLEA AGREEMENT

The United States of America, by counsel, Zachary A. Myers, United States Attorney for the Southern District of Indiana, and, Tiffany J. Preston, Assistant United States Attorney ("the Government"), and the defendant, Tammy J. Scudder ("the defendant"), in person and by counsel, Matthew Kubacki, hereby inform the Court that a Plea Agreement has been reached in this case pursuant to Federal Rule of Criminal Procedure 11(c)(1)(B).  The following are its terms and conditions:

### Part 1:  Guilty Plea and Charge(s)

1.    **Plea of Guilty:** The defendant having waived the right to indictment by a grand jury, petitions the Court for leave to enter and agrees to enter a plea of guilty to the following offense(s) charged in the Information:

i.    Counts One, Two, Three, and Four which charge that the defendant committed the offense of Wire Fraud, in violation of Title 18, United States Code, Sections 1343 and 2.

2.     **Potential Maximum Penalties**:  The offenses are punishable by a maximum sentence of 20 years' imprisonment, a $250,000 fine, and up to 3 years' supervised release following any term of imprisonment.

3.     **Elements of the Offense:**   To sustain the offenses to which the defendant is pleading guilty, the Government must prove the following elements beyond a reasonable doubt:

a.     That the defendant knowingly devised or participated in a scheme to defraud, as described in Counts 1-4; and

b.     That the defendant did so with the intent to defraud; and

c.     The scheme to defraud involved a materially false or fraudulent pretense, representation, or promise; and

d.     That for the purpose of carrying out the scheme or attempting to do so, the defendant used or caused the use of interstate wire communications to take place in the manner charged in the particular count.

## Part 2:  General Provisions

4.     **Sentencing Court's Discretion Within Statutory Range:**  The defendant agrees and understands that: (A) the Court will use its discretion to fashion a sentence within the statutory range(s) set forth above; (B) the Court will consider the factors set forth in 18 U.S.C. § 3553(a) in determining the appropriate sentence within the statutory range(s); (C) the Court will also consult and take into account the United States Sentencing Guidelines ("Sentencing Guidelines" or "U.S.S.G.") in determining the appropriate sentence within the statutory range(s); (D) the Sentencing Guidelines are not mandatory or binding on the Court, but are advisory in nature; (E) restitution may be imposed; (F) by pleading "Guilty" to more than one offense (Count), the Court may order the sentences to be served consecutively one after another; (G) the final determination

concerning the applicable advisory guideline calculation, criminal history category, and advisory sentencing guideline range will be made by the Court; and (H) by pleading "Guilty," the Court may impose the same punishment as if the defendant had plead "Not Guilty," had stood trial and been convicted by a jury.

5.     **Sentencing Court Not Bound by Guidelines or Recommendations:**   The defendant acknowledges that this Plea Agreement is governed by Federal Rule of Criminal Procedure 11(c)(1)(B) and that the determination of the defendant's sentence is within the discretion of the Court.  The defendant understands that if the Court decides to impose a sentence higher or lower than any recommendation of either party, or determines a different advisory sentencing guideline range applies in this case, or decides to impose a sentence outside of the advisory sentencing guideline range for any reason, then the defendant will not be permitted to withdraw this plea of guilty for that reason and will be bound by this plea of guilty.

6.     **Plea Agreement Based on Information Presently Known:**   The defendant recognizes and understands that this Plea Agreement is based upon the information presently known to the Government.  The Government agrees not to bring other federal charges against the defendant based on information currently known to the United States Attorney for the Southern District of Indiana.

The Government will inform the Court and the defendant at the time of taking the defendant's plea whether the Government has obtained any information after the Plea Agreement was signed that may warrant bringing other federal charges against the defendant.

7.     **No Protection From Prosecution for Unknown or Subsequent Offenses:**  The defendant acknowledges and agrees that nothing in this agreement shall protect the defendant in any way from prosecution for any offense not specifically covered by this agreement, or not known

to the United States Attorney for the Southern District of Indiana at this time.  The defendant further acknowledges and agrees that nothing in this agreement shall protect the defendant in any way from prosecution for any offense committed after the date of this agreement.

8.      **Rights Under Rule 11(b), Fed. R. Crim. P.:**  The defendant understands that the Government has the right, in a prosecution for perjury or false statement, to use against the defendant any statement that the defendant gives under oath during the guilty plea colloquy.  The defendant also understands that the defendant has the right: (A) to plead not guilty, or having already so pleaded, the right to persist in that plea; (B) to a jury trial; (C) to be represented by counsel--and if necessary have the court appoint counsel--at trial and at every other stage of the proceedings, including appeal; and (D) to confront and cross-examine adverse witnesses, to be protected from compelled self-incrimination, to testify and present evidence, and to compel the attendance of witnesses.  The defendant also understands that the Constitution guarantees the right to be considered for release until trial[1]; and if found guilty of the charge(s), the right to appeal the conviction on such charge(s) to a higher court.  The defendant understands that if the Court accepts this plea of guilty, the defendant waives all of these rights.

### Part 3:  Sentence of Imprisonment

9.      **Sentencing Recommendation Pursuant to Federal Rule of Criminal Procedure 11(c)(1)(B):**  The parties have **not** agreed upon a specific sentence.  The parties reserve the right to present evidence and arguments concerning what they believe to be the appropriate sentence in this matter.

a.      **Government's Recommendation:**      The Government has agreed to request a sentence at the low end of the applicable advisory Sentencing Guidelines Range as calculated by

---

[1]Title 18, U.S.C. '' 3141-3156, Release and Detention Pending Judicial Proceedings.

the Court at sentencing, provided that the defendant (i) continues to fully accept responsibility for the offense, (ii) does not commit a new criminal offense before the date of any sentencing, and (iii) does not otherwise violate the terms of any pre-trial release before the date of sentencing.

**b.     Defendant's Recommendation:**  The defendant understands that she is free to ask for any sentence, including one below the applicable advisory range provided in the Sentencing Guidelines.

**10.     Placement:**  The defendant requests that this Court recommend to the Federal Bureau of Prisons that the defendant serve any sentence of imprisonment imposed in this case at a place named at the time of sentencing.  The defendant acknowledges and understands that any recommendation by the Court is only a recommendation and does not bind the Federal Bureau of Prisons.  The Government does not object to the defendant's requested recommendation.

**11.     Supervised Release:**  Both parties reserve the right to present evidence and arguments concerning whether the Court should impose a term of supervised release to follow any term of imprisonment in this case, the duration of any term of supervised release, and the terms and conditions of the release.

**12.     Conditions of Supervised Release:**  The parties understand and agree that the Court will determine which standard and special conditions of supervised release to apply in this case.  The parties reserve the right to present evidence and arguments concerning these conditions.

## Part 4:  Monetary Provisions and Forfeiture

**13.     Mandatory Special Assessment:**  The defendant will pay a total of $400 special assessment on the date of sentencing or as ordered by the Court to the Clerk, United States District Court, which amount represents the mandatory special assessment fee imposed pursuant to 18 U.S.C. § 3013.

14.     **Fine:** The parties agree that the imposition of a fine in this case is left to the discretion of the Court.

15.     **Restitution:**   Pursuant to Title 18, United States Code, Section 3663(a)(3), the defendant agrees to pay restitution in the amount of $693,708.75 to Plymate, Inc. for all losses caused by the defendant's conduct, regardless of whether counts of the indictment/ information dealing with such losses will be dismissed as part of this plea agreement.   The defendant agrees that, while the District Court sets the payment schedule, this schedule may be exceeded if and when the defendant's financial circumstances change.   In that event, and consistent with its statutory obligations, the Government may take any and all actions necessary to collect the maximum amount of restitution in the most expeditious manner available.

16.     **Obligation to Pay Financial Component of Sentence**:  If the defendant is unable to pay any financial component of the defendant's sentence on the date of sentencing, then the defendant agrees that the payment of the financial component should be a condition of supervised release.  The defendant has a continuing obligation to pay the financial component of the sentence. The defendant further agrees that as of the date of filing this Plea Agreement the defendant will provide all requested financial information, including privacy waivers, consents, and releases requested by the Government to access records to verify the defendant's financial disclosures,  to the  Government for use in the collection of any fines, restitution, and money judgments imposed by the Court and authorizes the Government to obtain credit reports relating to the defendant for use in the collection of any fines and restitution, and money judgments imposed by the Court.  The defendant also authorizes the Government to inspect and copy all financial documents and information held by the United States Probation Office.  If the defendant is ever incarcerated in

connection with this case, the defendant may participate in the Bureau of Prisons Inmate Financial Responsibility Program.

17.     Defendant understands that any forfeiture order entered by the court is mandatory and is a part of defendant's sentence.  Defendant stipulates and agrees to the immediate entry of a Preliminary Order of Forfeiture, pursuant to Federal Rule of Criminal Procedure 32.2(b)(2), against Defendant, directly forfeiting $683,708.75 in the form of a money judgment, which parties stipulate and agree are the proceeds defendant obtained from the wire fraud as charged in Counts 1-4 of the Information, and which are subject to forfeiture pursuant to Title 18 United States Code, Section 981(a)(1)(C) and Title 28 United States Code, Section 2461(c) as:

- Property which constitutes or was derived from proceeds traceable to the offenses.

18.     Defendant acknowledges and agrees that any and all property in which Defendant has an interest, and that are not already subject to direct forfeiture, are subject to forfeiture as substitute assets under Title 21, United States Code, Section 853(p), as incorporated by Title 18, United States Code, Section 982(b)(1) and Title 28, United States Code, Section 2461.

19.     Defendant agrees not to oppose, and to withdraw any previously filed opposition to, any administrative or judicial forfeiture action related to the conduct described in the Indictment/Information filed in this case.  Defendant waives any right to receive any notices or pleadings filed in any forfeiture action related to the conduct described in the Indictment/Information and agrees that a default or final judgment of forfeiture may be entered against Defendant's interest without further notice to Defendant or Defendant's attorney.

20.     Defendant waives the requirements of Federal Rules of Criminal Procedure 32.2 and 43(a) regarding notice of the forfeiture in the Indictment/Information, announcement of the forfeiture at sentencing, and incorporation of the forfeiture into the judgment. Defendant waives

all rights to any further notice or right to participate in any ancillary proceeding or any other proceeding pertaining to this forfeiture.  Defendant waives the right to be informed of any potential forfeiture at the time Defendant's guilty plea is accepted, pursuant to Rule 11(b)(1)(J).

21.     This Court shall retain jurisdiction to settle any disputes arising from application of this cause.  Defendant agrees that forfeiture of substitute assets, as authorized in this Plea Agreement and by 21 U.S.C. § 853(p), shall not be deemed an alteration of Defendant's sentence and that forfeiture of the assets described above shall not be treated as satisfaction of any restitution, fine, cost of imprisonment, or any other penalty the Court may impose upon the Defendant in addition to forfeiture.

22.     Defendant hereby waives any and all constitutional and statutory challenges she could raise on any ground and in any manner (including by direct appeal, habeas corpus, or any other means) to any forfeiture carried out in accordance with this plea agreement, including any argument that the forfeiture constitutes an excessive fine or punishment.

### Part 5:  Factual Basis for Guilty Plea

23.     The parties stipulate and agree that the following facts establish a factual basis for the defendant's plea of guilty to the offenses set forth in Paragraph One, above, and that the Government would be able to establish the following facts beyond a reasonable doubt in the event this cause was to proceed to trial.   The following information is only a summary of the Government's evidence. This Plea Agreement is not intended to foreclose the presentation of and the Government reserves the right to present additional evidence at the time of sentencing.

Beginning in approximately 2012, and continuing until at least approximately December 2020, TAMMY J. SCUDDER ("SCUDDER") was the Controller for Plymate, Inc. ("Plymate"). SCUDDER resided in Shelbyville, Indiana, which is in the Southern District of Indiana, and

8

maintained a personal checking account at First Merchants Bank, in Muncie, Indiana, ending 7190, and a personal saving's account at KeyBank ending in 2706. Plymate was an Indiana corporation in the business of providing uniform rentals, floor mats, and commercial supplies for other businesses including school systems. Plymate's operations were based in Shelbyville, Indiana, which is within the Southern District of Indiana. Plymate maintained a corporate bank account at KeyBank ending in 1166 ("Plymate's Operations KeyBank Account"). KeyBank is a regional bank headquartered in Cleveland, Ohio, and is the primary subsidiary of KeyCorp.

As Controller, SCUDDER was Plymate's top accounting employee, and reported directly to the Chief Executive Officer, Individual A. SCUDDER's duties and responsibilities included overseeing Plymate's accounting department, maintaining Plymate's accounting ledgers, and managing Plymate's payroll, accounts payable and receivable, and Plymate's Operations KeyBank Account and other accounts. As Controller, SCUDDER had access to Plymate's online Operations KeyBank Account and other accounts. SCUDDER further had access to Plymate's QuickBooks software, and thus, SCUDDER was able to generate checks in Plymate's name and print them onto Plymate's check stock to which she also had access. SCUDDER further had access to Individual A's signature stamp, which could be used as signature authority on checks in which Plymate was the payor. Checks generated by Plymate's QuickBooks software in which Plymate was the payor were funded by Plymate's Operations KeyBank Account.

As Controller, SCUDDER knew that Plymate provided health insurance to its employees through a self-funded plan ("Plymate's Group Health Plan"). Plymate's Group Health Plan was administrated by an outside entity, Company A. As part of Plymate's Group Health Plan, Plymate employees submitted their health insurance claims to Company A for processing. Company A then prepared a list of each claim, and submitted the list on a weekly basis to Plymate for payment.

Plymate funded its employees' Group Health Plan claims by making transfers from its Plymate Operations KeyBank account to its Plymate Group Health Plan KeyBank account.  Upon receiving Company A's list of Plymate's employees' health insurance claims submitted as part of Plymate's Group Health Plan, Plymate transferred the total amount of all of the submitted claims from its Operations KeyBank account to its Group Health Plan KeyBank account.  Company A then drafted individual checks from the Plymate Group Health Plan KeyBank account to the payee employee or provider in the amount of the individual employee's claim, and mailed the checks to the Plymate employee or the provider.  The Plymate Group Health Plan KeyBank account was funded by the Plymate Operations KeyBank account through the weekly transfers.

SCUDDER admits that she was authorized to use funds in Plymate's Operations KeyBank Account, and its payroll and accounts payable systems for business expenses only, and not for personal expenditures.

Beginning in or about 2012, and continuing until at least in or about December 2020, in the Southern District of Indiana, Indianapolis Division, and elsewhere, TAMMY J. SCUDDER devised, intended to devise, and participated in a scheme to defraud, and to obtain money and property by means of materially false and fraudulent pretenses, representations, and promises, and by concealment of material facts, which scheme is further described below:

It was part of the scheme that SCUDDER abused her position of trust as Plymate's Controller to exploit a vulnerability in Plymate's accounting system in that SCUDDER knew that Plymate's Group Health Plan KeyBank account was difficult to reconcile because the Group Health Plan KeyBank account was funded by Plymate's Operations KeyBank account based upon the total amount of the weekly claims on the list it received from Company A, rather than by each claim individually.  There was an unpredictable time delay for when each individual check would

10

be cashed by the payee.

SCUDDER accessed Plymate's QuickBooks software to generate and print a Plymate check from payor Plymate to payee SCUDDER.  SCUDDER then printed the check onto Plymate check stock and used Individual A's signature stamp on the payer signature line, without Individual A's knowledge, authorization, or consent.   After SCUDDER printed the check, SCUDDER concealed the theft by altering Plymate's QuickBooks records.  SCUDDER first voided the check in Plymate's QuickBooks software, and then intentionally deleted all of the data relating to the check from the QuickBooks software to conceal the creation of the check from Plymate's records. SCUDDER further concealed her theft by falsifying Plymate's accounting records to hide the funds she had embezzled by either:

a.     Falsely increasing the records showing the total amount of health care claims submitted by Plymate employees as part of Plymate's Health Care Plan by the amount that SCUDDER had embezzled; or

b.     Creating false entries in Plymate's QuickBooks software to make it appear that that Plymate had transferred funds in the amount that she had embezzled from Plymate's Operations KeyBank account to Plymate's Group Health Plan KeyBank account, when in fact, no such transfer had taken place.

It was further part of the scheme that SCUDDER falsified records in order to conceal her theft by making it appear as though Plymate's Operating and Group Health Plan Accounts had been approximately reconciled, when in fact, SCUDDER did not complete these reconciliations because to have done so would have shown an imbalance in the Group Health Plan KeyBank account and highlighted her theft of funds from Plymate. The checks that SCUDDER created from Plymate to SCUDDER were funded through Plymate's Operations KeyBank Account.

SCUDDER executed the checks by depositing them into her First Merchants checking account ending in 7190, or by depositing them into her KeyBank saving's account ending in 2706.

SCUDDER used the funds she embezzled from Plymate for her own personal expenditures such as personal vacations, paying off personal debt, funding her children's educational expenditures, and by making improvements to a residence she owned in Shelbyville, Indiana.

For example, it was further part of the scheme that as set forth in Count 1, on or about March 1, 2018, employees from Plymate submitted claims to Plymate's Group Health Plan to Company A in the amount of $343.13.  SCUDDER used Plymate's QuickBooks software to generate a check from payor Plymate to payee SCUDDER in the amount of $4,138.62 SCUDDER then printed the check she generated onto Plymate's check stock, and used Individual A's signature stamp to sign as payor without his knowledge, authorization, or consent.  SCUDDER then concealed the fraudulent payment by first voiding the check she generated, and then deleting the data from Plymate's QuickBooks software.  SCUDDER then falsified Plymate's QuickBooks records by increasing the amount Plymate transferred from its Operations KeyBank account from $343.13 to $4,481.75 (representing the total of the legitimate employee health insurance claims of $343.13 and SCUDDER's false and fraudulent check in the amount of $4,138.62).  SCUDDER's false entries and deletions made it appear that Plymate had received $4,481.75 in employee health care claims from Company Aon or about March 1, 2018, when in reality, Plymate had only received $343.11.

Accordingly, and using the scheme described above, on or about the date specified below, TAMMY J. SCUDDER, for the purpose of executing the aforesaid scheme and artifice, and attempting to do so, SCUDDER did knowingly transmit and cause to be transmitted, by means of wire communication in interstate and foreign commerce, certain writings, signs, and signals, as

more particularly described below:

| Count | Approximate Date | Description of Wire Communication |
|---|---|---|
| 1 | March 6, 2018 | $4,138.62 check from Plymate's Operations KeyBank account deposited into Scudder's First Merchants bank personal checking account, with $700 cash back. |
| 2 | December 4, 2017 | $8,947.02 check from Plymate's Operations KeyBank account deposited into Scudder's First Merchants bank personal checking account, with $700 cash back. |
| 3 | January 8, 2019 | $5,218.09 check from Plymate's Operations KeyBank account deposited into Scudder's First Merchant's bank personal checking account, with $3,204.30 cash back that was immediately used to purchase an official bank check to "Hoosier Closets" with Scudder as the remitter |
| 4 | March 5, 2020 | $9,862.40 check from Plymate's Operations KeyBank account deposited into Scudder's First Merchants bank personal checking account, with $300 cash back. |

Between February 2, 2012, and December 17, 2020, SCUDDER generated, printed, and used Individual A's signature stamp to create 154 false and fraudulent checks from payor Plymate to payee SCUDDER in the amount of $693,708.75. SCUDDER deposited $624,722.75 in stolen funds into her bank accounts at First Merchants Bank ending in 7190 and KeyBank ending in 2706,

13

and then used the funds for her own personal expenditures.  Upon presentation of a majority of the fraudulent checks for deposit, cash back was taken prior to deposit and totaled $68,986.

SCUDDER admits that she misrepresented, concealed, and hid, and cause to be misrepresented, concealed, and hidden, acts done in furtherance of the scheme and the purpose of those acts.

### Part 6:  Other Conditions

24.     **Background Information:**  The defendant acknowledges and understands that no limitation shall be placed upon the Court's consideration of information concerning the background, character, and conduct of the defendant for the purpose of imposing an appropriate sentence.  The defendant acknowledges and understands that the Government is not prohibited from providing information concerning background, character, and conduct of the defendant for the purpose of recommending or advocating an appropriate guideline calculation and sentence.

25.     **Good Behavior Requirement:**  The defendant agrees to fully comply with all conditions of release imposed by the Court during all stages of this case.  If the defendant fails to fully comply with such conditions, then the Government may withdraw from this Agreement.

26.     **Compliance with Federal and State Laws:**  The defendant understands that the obligations of the Government in this Plea Agreement are expressly contingent upon the defendant abiding by federal and state laws.

### Part 7:  Sentencing Guideline Stipulations

27.     **Guideline Computations:**     Pursuant to Section 6B1.4 of the Sentencing Guidelines, the parties agree to the Stipulations below.  The parties understand and agree that these Stipulations are binding on the parties but are only a recommendation to the Court and that the Court will determine the advisory sentencing guidelines applicable in this case.  The parties agree

that no stipulation regarding any factors in Chapter 4, Criminal History Category, of the Sentencing Guidelines has been made, and that such determination will be made by the Court.  The 2021 version of the Sentencing Guidelines has been used by the parties to make the stipulations set forth below.

A.   **Chapter 2: Count 1: 18 U.S.C. § 1343**

i.    The Base Offense level is 7.  U.S.S.G. § 2B1.1(a)(1)

ii.   The base offense level is increased by 14 under U.S.S.G. § 2B1.1(b)(1)(H) because the loss amount is more than $550,00 but less than $1,500,000

iii.  Chapter 2 subtotal: 21

B.   **Chapter 2: Count 2: 18 U.S.C. § 1343**

i.    The Base Offense level is 7.  U.S.S.G. § 2B1.1(a)(1)

ii.   The base offense level is increased by 14 under U.S.S.G. § 2B1.1(b)(1)(H) because the loss amount is more than $550,00 but less than $1,500,000

iii.  Chapter 2 subtotal: 21

C.   **Chapter 2: Count 3: 18 U.S.C. § 1343**

i.    The Base Offense level is 7.  U.S.S.G. § 2B1.1(a)(1)

ii.   The base offense level is increased by 14 under U.S.S.G. § 2B1.1(b)(1)(H) because the loss amount is more than $550,00 but less than $1,500,000

iii.  Chapter 2 subtotal: 21

D.   **Chapter 2: Count 4: 18 U.S.C. § 1343**

i.    The Base Offense level is 7.  U.S.S.G. § 2B1.1(a)(1)

ii.   The base offense level is increased by 14 under U.S.S.G. § 2B1.1(b)(1)(H) because the loss amount is more than $550,00 but less than $1,500,000

iii.     Chapter 2 subtotal: 21

E.     **Chapter 3:**

Multiple Counts:

i.     Pursuant to § 3D1.1(a)(1), Counts grouped as follows: Group 1 is Count 1 (18 U.S.C. § 1343), Count 2 (18 U.S.C. § 1343), Count 3 (18 U.S.C. § 1343), Count 4 (18 U.S.C. § 1343).

ii.     Pursuant to § 3D1.1(a)(2) & 3D1.3, offense levels applicable for each group: Group 1: 21. Highest offense level: 21

iii.     Pursuant to § 3D1.1(a)(3),  the total units are 1unit for an increase of 0 levels.

iv.     Subtotal 21

Acceptance of Responsibility (U.S.S.G. § 3E1.1)

**i.     Acceptance of Responsibility:**   To date, the defendant has demonstrated a recognition and affirmative acceptance of personal responsibility for the defendant's criminal conduct.  Based upon the defendant's willingness to accept a Plea Agreement and enter a plea of guilty to the criminal conduct noted in this agreement [and the defendant's agreement to cooperate in and not to contest the forfeiture of the property described above], the Government agrees that the defendant should receive a two (2) level reduction *provided* the defendant  satisfies the criteria set forth in Guideline § 3E1.1(a) up to and including the time of sentencing.  The defendant timely notified the Government of defendant's intention to enter a plea of guilty, thereby permitting the Government and the Court to allocate their resources efficiently.  After the Defendant enters a plea of guilty, the Government intends to file a motion pursuant to U.S.S.G. § 3E1.1(b) requesting that the Court decrease the offense level by one (1) additional level.  The parties reserve the right to

present evidence and arguments concerning the defendant's acceptance of responsibility at the time of sentencing.

ii.     **Final Offense Level:**  18

### Part 8:  Waiver of Right to Appeal

28.     **Direct Appeal:**  The defendant understands that the defendant has a statutory right to appeal the conviction and sentence imposed and the manner in which the sentence was determined.   Acknowledging this right, and in exchange for the concessions made by the Government in this Plea Agreement, the defendant expressly waives the defendant's right to appeal the conviction and sentence imposed in this case on any ground, including the right to appeal conferred by 18 U.S.C. § 3742.  The defendant further expressly waives any and all challenges to the statute to which the defendant is pleading guilty on constitutional grounds, as well as any challenge that the defendant's admitted conduct does not fall within the scope of the applicable statute. This waiver of appeal specifically includes all provisions of the guilty plea and sentence imposed, including the length and conditions of supervised release and the amount of any fine.

29.     **Later Legal Challenges:**   Additionally, the defendant expressly agrees not to contest, or seek to modify, the defendant's conviction or sentence or the manner in which either was determined in any later legal proceeding, including but not limited to, an action brought under 18 U.S.C. § 3582 or 28 U.S.C. § 2255, <u>except</u> as follows:

a.     **Ineffective Assistance of Counsel:**  As concerns the Section 2255 waiver, the waiver does not prevent claims, either on direct or collateral review, that the defendant received ineffective assistance of counsel.

b.     **Retroactive Sentencing Guidelines Reductions:**  As concerns this Section 3582 waiver, should the United States Sentencing Commission and/or Congress in the future amend the

Sentencing Guidelines to lower the guideline range that pertains to the defendant's offense(s) and explicitly make such an amendment retroactive, the Government agrees that it will not argue that this waiver bars the defendant from filing a motion with the district court pursuant to 18 U.S.C. § 3582(c)(2) based on that retroactive Guidelines amendment.  However, if the defendant files such a motion, the Government may oppose the motion on any other grounds.  Furthermore, should the defendant seek to appeal an adverse ruling of the district court on such a motion, this waiver bars such an appeal.

      **a.**     **Motions for Compassionate Release:**  As concerns the Section 3582 waiver, the defendant reserves the right to file motions seeking a "compassionate release" sentence reduction pursuant to the First Step Act of 2018 and 18 U.S.C. § 3582(c)(1)(A)(i).  Any such motion must be based on one or more "extraordinary and compelling reasons" set forth in U.S.S.G. § 1B1.13 and the governing interpretations of that provision and its application notes (or, in the event of amendment of that U.S.S.G. provision or the relevant application notes, the provision(s), if any, with the same effect at the time of the filing of the motion for sentence reduction).  The defendant further agrees that under application note 1(D), as it appears in the 2018 Guidelines Manual, the defendant may assert only those reasons set forth in the relevant Bureau of Prisons program statement in effect at the time of the defendant's motion (currently Program Statement 5050.50).  The government further reserves the right to oppose any motion for compassionate release on any other grounds.

      **30.**     **No Appeal of Supervised Release Term and Conditions:**  The defendant waives the right to appeal the length and conditions of the period of supervised release.

**Part 9:  Presentence Investigation Report**

**31.**     The defendant requests and consents to the commencement of a presentence investigation by probation officers of the United States District Court for purposes of preparing a Presentence Investigation Report at this time and prior to the entry of a formal plea of guilty.

**32.**     The defendant further requests and consents to the review of the defendant's Presentence Investigation Report by a Judge, defendant's counsel, the defendant, and the Government at any time, including prior to entry of a formal plea of guilty.

**Part 10:  Immigration Consequences**

**33.**     The defendant recognizes that pleading guilty may have consequences with respect to the defendant's immigration status if the defendant is not a citizen of the United States.  Under federal law, a broad range of crimes are removable offenses, including the offenses to which the defendant is pleading guilty.  The defendant also recognizes that removal will not occur until service of any sentence imposed in this case has been completed.  Removal and other immigration consequences are the subject of a separate proceeding, however, and the defendant understands that no one, including the defendant's attorney or the Court, can predict to a certainty the effect of the conviction in this case on the defendant's immigration status.  The defendant nevertheless affirms that the defendant wants to plead guilty regardless of any immigration consequences that this plea may entail, even if the consequence is the defendant's removal from the United States.

**Part 11:  Statement of the Defendant**

**34.**     By signing this document, the defendant acknowledges the following:

**a.**     I have received a copy of the Information and have read and discussed it with my attorney.  I believe and feel that I understand every accusation made against me in this case. I wish

the Court to omit and consider as waived by me all readings of the Indictment/Information in open

Court, and all further proceedings including my arraignment.

     **b.**     I have told my attorney the facts and surrounding circumstances as known to me

concerning the matters mentioned in the Information, and believe and feel that my attorney is fully

informed as to all such matters.  My attorney has since informed, counseled and advised me as to

the nature and cause of every accusation against me and as to any possible defenses I might have

in this case.

     **c.**     I have read the entire Plea Agreement and discussed it with my attorney.

     **d.**     I understand all the terms of the Plea Agreement and those terms correctly reflect

the results of plea negotiations.

     **e.**     Except for the provisions of the Plea Agreement, no officer or agent of any branch

of Government (federal, state or local), nor any other person, has made any promise or suggestion

of any kind to me, or within my knowledge to anyone else, that I would receive a lighter sentence,

or probation, or any other form of leniency, if I would plead "Guilty."  I respectfully request that

the Court consider in mitigation of punishment at the time of sentencing the fact that by voluntarily

pleading "Guilty" I have saved the Government and the Court the expense and inconvenience of a

trial.  I understand that before it imposes sentence, the Court will address me personally and ask

me if I wish to make a statement on my behalf and to present any information in mitigation of

punishment.

     **f.**     I am fully satisfied with my attorney's representation during all phases of this case.

My attorney has done all that anyone could do to counsel and assist me and that I fully understand

the proceedings in this case against me.

**g.** I make no claim of innocence, and I am freely and voluntarily pleading guilty in this case.

**h.** I am pleading guilty as set forth in this Plea Agreement because I am guilty of the crime(s) to which I am entering my plea.

**i.** I understand that if convicted, a defendant who is not a United States Citizen may be removed from the United States, denied citizenship, and denied admission to the United States in the future.

**j.** My attorney has informed me, and I understand, that I have the right to appeal any conviction and sentence that I receive, unless I have waived my right to appeal as part of this Plea Agreement. If I have not waived my right to appeal, I understand that I must file a Notice of Appeal within fourteen (14) days of the entry of the judgment in this case; I further understand that the Clerk of the Court will prepare and file a Notice of Appeal on my behalf if I ask that to be done. I also understand that the United States has the right to appeal any sentence that I receive under this Plea Agreement.

**k.** My attorney has informed me, and I understand, that if I provide or cause to be provided materially false information to a judge, magistrate-judge, or probation office, then Section 3C1.1 of the Sentencing Guidelines allows the Court to impose a two-level increase in the offense level.

**l.** If this cause is currently set for trial on the Court's calendar, I request that this date be continued to permit the Court to consider this proposed guilty Plea Agreement. I further understand that any delay resulting from the Court's consideration of this proposed guilty Plea Agreement, up to and including the date on which the Court either accepts or rejects my guilty

plea, will be excluded in computing the time within which trial of this cause must commence, pursuant to 18 U.S.C. § 3161(h)(1)(G).

## **Part 12:  Certificate of Counsel**

**35.**  By signing this document, the defendant's attorney and counselor certifies as follows:

**a.**  I have read and fully explained to the defendant all the accusations against the Defendant which are set forth in the Information in this case;

**b.**  To the best of my knowledge and belief each statement set forth in the foregoing petition to enter plea of guilty and Plea Agreement is in all respects accurate and true;

**c.**  The plea of "Guilty" as offered by the defendant in the foregoing petition to enter plea of guilty and Plea Agreement accords with my understanding of the facts as related to me by the defendant and is consistent with my advice to the defendant;

**d.**  In my opinion, the defendant's waiver of all reading of the Information in open Court, and in all further proceedings, including arraignment as provided in Rule 10, Fed. R. Crim. P., is voluntarily and understandingly made; and I recommend to the Court that the waiver be accepted by the Court;

**e.**  In my opinion, the plea of "Guilty" as offered by the defendant in the foregoing petition to enter plea of guilty and Plea Agreement is voluntarily and understandingly made and I recommend to the Court that the plea of "Guilty" be now accepted and entered on behalf of the defendant as requested in the foregoing petition to enter plea of guilty and Plea Agreement.

## Part 13:  Final Provision

36.     **Complete Agreement:**  The defendant acknowledges that no threats, promises, or representations have been made, nor agreements reached, other than those set forth in this document, to induce the defendant to plead guilty.  This document is the complete and only Plea Agreement between the defendant and the United States Attorney for the Southern District of Indiana and is binding only on the parties to the Plea Agreement, supersedes all prior understandings, if any, whether written or oral, and cannot be modified except in writing, signed by all parties and filed with the Court, or on the record in open court.

Respectfully submitted,

ZACHARY A. MYERS
United States Attorney

9/14/22
_____
DATE

Tiffany J. Preston
Assistant United States Attorney

9.14.22
_____
DATE

Kyle M. Sawa
Unit Chief, General Crimes

09/14/22
_____
DATE

Tammy J Scudder
_____
Tammy J. Scudder
Defendant

09/14/22
_____
DATE

/S/ Matthew Kubacki
_____
Matthew Kubacki
Counsel for Defendant

23